**E. Lee WARREN, Lilly Frayer, Ester Hensley and Arlie Warren, Appellants–Plaintiffs,**

v.

**IOOF CEMETERY, Betty Jo Ball, Mae Wilson, Mary Collins, Martha Brewer, Lizzie Hartig, Mat Warren, Julie Schoff and David C. Van Gilder, Appellees–Defendants.**

No. 02A03–0806–CV–333.

Court of Appeals of Indiana.

Feb. 25, 2009.

---

Denver C. Jordan, Jennifer M. Young, Blume, Connelly, Jordan, Stucky & Lauer, LLP, Fort Wayne, IN, Attorneys for Appellants.

Mark E. Giaquinta, Haller & Colvin, P.C., Fort Wayne, IN, Attorney for Appellees Betty Jo Ball, Mae Wilson, Mary Collins, Martha Brewer, Lizzie Hartig, Mat Warren, and Julie Schoff.

## OPINION

BAILEY, Judge.

### Case Summary

Four of the surviving children of Sherman Warren ("Sherman") and Isabella

Warren ("Isabella"), E. Lee Warren, Lilly Frayer, Ester Hensley, and Arlie Warren ("the Warren Plaintiffs") brought an action challenging a 2005 disinterment of Sherman's remains, naming as defendants their siblings Betty Jo Ball, Mae Wilson, Mary Collins, Martha Brewer, Lizzie Hartig, Mat Warren, and Julie Schoff, IOOF Cemetery, David C. Van Gilder, as guardian of Isabella, and the Indiana State Department of Health (collectively, "the Warren Defendants"). The defendants were granted summary judgment. We affirm.

### Issue

The Warren Plaintiffs state six issues for review, which we consolidate and restate as a single issue: whether summary judgment was properly granted to the Warren Defendants.

### Facts and Procedural History

Sherman died in 1970 and was buried in a cemetery in Barbourville, Kentucky, where Isabella also planned to be buried. Isabella moved in with their youngest daughter and lived with her until the daughter died and was buried in IOOF Cemetery in New Haven, Indiana. In May of 2005, pursuant to the grant of a Kentucky disinterment permit, Sherman's remains were disinterred and moved to IOOF Cemetery.

On March 8, 2006, the Warren Plaintiffs filed their "Complaint for Declaratory Judgment and to Set Aside Authorization for Disinterment of Remains of Sherman Warren" in the Allen Superior Court. (App.45.) The Warren Plaintiffs alleged that Isabella suffered from advanced Alzheimer's and that her authorization for disinterment was wrongfully procured. Specifically, the Warren Plaintiffs sought relief as follows:

> the Plaintiffs ... respectfully move the Court to declare that the alleged authorization given by Isabella Warren on April 5, 2005, to disinter her husband's

remains be set aside as invalid and illegal, order that the consent of Isabella Warren be waived to disinter the remains of Sherman Warren from the IOOF Cemetery located in New Haven, Allen County, Indiana, declare that the remains of Sherman Warren be transported to his burial plot at the Barbourville City Cemetery in Barbourville, Kentucky, where his remains should be re-interred, declare that the remains of Isabella Warren be interred next to those of her husband at the Barbourville City Cemetery in Barbourville, Kentucky as she directed when she was legally competent to do so, and grant the Plaintiff all other just and proper relief in the premises.

(App.50–51.) Isabella died on October 17, 2007, and was buried next to Sherman and their daughter in Indiana. The Warren Defendants moved for summary judgment, which was granted. The Warren Plaintiffs appeal.

### Discussion and Decision

#### I.   Standard of Review

A party seeking summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Smith v. City of Hammond,* 848 N.E.2d 333, 337 (Ind.Ct.App.2006), *trans. denied.* Once the movant satisfies this burden through evidence designated to the trial court pursuant to Indiana Trial Rule 56, the non-movant may not rest upon its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.*

On review, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and

whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind. 1999). In so doing, we consider only those portions of the pleadings, depositions, and other matters specifically designated to the trial court by the parties for purposes of the motion. Ind. Trial Rule 56(C), (H). We accept as true those facts alleged by the non-moving party, which are supported by affidavit or other evidence. *McDonald v. Lattire*, 844 N.E.2d 206, 212 (Ind.Ct. App.2006).

The trial court's order granting summary judgment is cloaked with a presumption of validity. *In re Nobbe*, 831 N.E.2d 835, 839 (Ind.Ct.App.2005). Where, as here, the trial court has entered specific findings and conclusions, they may provide valuable insight into the trial court's rationale, but we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 767 (Ind.Ct.App.2003). Rather, a grant of summary judgment may be sustained on any theory or basis supported by the designated materials. *Smith v. Yang*, 829 N.E.2d 624, 625 (Ind.Ct.App.2005).

## II. Analysis

The Warren Plaintiffs' Complaint requested both a declaratory judgment and an injunction. They ultimately sought an order to disinter the bodies of both parents, move them to Kentucky, and re-inter them in the Barbourville City Cemetery. However, they concentrated their summary judgment efforts upon the declaratory judgment claim, presenting argument and designating summary judgment materials designed to demonstrate Isabella's

incompetency when the Kentucky permit was procured.[1]

The trial court determined that it would give full faith and credit to a permit issued by a sister state and the proper forum, if any, in which to challenge the validity of the permit based upon Isabella's alleged incompetency was the State of Kentucky. The Full Faith and Credit Clause of the United States Constitution mandates that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. Const. art. IV, § 1. Accordingly, Indiana has enacted Indiana Code Section 34–39–4–3, which provides that records and judicial proceedings of foreign courts that have been properly authenticated "shall have full faith and credit given to them in any court in Indiana as by law or usage they have in the courts in which they originated."

In their appellant's brief, the Warren Plaintiffs initially contended that full faith and credit is not due the Kentucky permit because it was fraudulently procured and subject to collateral attack. Without reference to a specific actor or misrepresentation, the Warren Plaintiffs reasoned that, because Isabella's incompetence was obvious, her scrawled and improperly placed signature on the letter requesting disinterment could only have been obtained through either a misrepresentation or undue influence.

Subsequently, the Warren Plaintiffs conceded that the crux of their claims, and the disposition that they ultimately seek, is not a declaration of the invalidity of the Kentucky permit, but rather the disinterment of their parents' remains in Indiana and re-interment in Kentucky. The Reply

---

1. The Warren Plaintiffs argue that the existence of the Kentucky disinterment permit was never established because no such permit was within the designated materials. None-theless, the Warren Plaintiffs' Complaint asserted that the permit existed and should be declared to be invalid.

Brief of the Warren Plaintiffs provides in relevant part: "Whether or not a Kentucky permit is found invalid by a Kentucky court, the Plaintiffs still need an Indiana Court Order directing the current disinterment of Sherman Warren's remains from the IOOF Cemetery in New Haven, Indiana. The Kentucky permit does not have to be found invalid for an Indiana Court to make this order." Reply Brief at 15–16.

The Warren Plaintiffs' primary objective was disinterment from the IOOF Cemetery and re-interment in the Barbourville City Cemetery, and no practical value would have been derived from either an Indiana or Kentucky court's declaration that the Kentucky disinterment permit was invalid. The fact remains that Sherman's and Isabella's bodies are interred in Indiana and so remain, regardless of any preceding events that brought them there, unless and until an order of an Indiana court provides for disinterment.[2]

▮▮▮▮ Indiana Code Section 23–14–57–1 specifies persons having authority to consent to disinterment, including surviving adult children. However, a person specified in the disinterment statute does not

have an absolute right to disinter remains as a matter of law, and rights of others who oppose disinterment may be considered. *Hickey v. Hickey*, 156 Ind.App. 610, 614, 298 N.E.2d 29, 31 (1973).[3] "Once relief is sought in the courts . . . the right to disinter is within the sound discretion of the trial court." *Id.* Thus, the Warren Plaintiffs' claim is one addressed to the equitable discretion of the trial court. "It is well-established in the United States that disinterment and removal is within the province of equity." *Id.* (citing *Pettigrew v. Pettigrew*, 207 Pa. 313, 56 A. 878 (1904)).

▮▮▮▮ Indiana Code Section 23–14–57–5 provides that, in cases where consent cannot be obtained, re-interment in another cemetery can be obtained "only under a judgment of the circuit or superior court with jurisdiction in the county in which the cemetery is located." However, this statute sets forth no specific criteria for the trial court's consideration in exercising its discretion. In general, an abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Daugh-*

---

2. The parties do not agree on disinterment so as to avoid a court order. Indiana Code Section 23–14–57–1(b)(3)(B) provides in relevant part:

   If there is more than one (1) surviving adult child of the deceased, the requirement for written consent under this subdivision is satisfied if:

   (i) Any one (1) of the surviving adult children provides written consent to the removal of the deceased's remains;

   (ii) The consent provided under item (i) confirms that all other surviving adult children of the deceased have been notified of the proposed removal of the deceased's remains; and

   (iii) The state department of health does not receive a written objection to the proposed removal from any of the deceased's surviving adult children.

3. The *Hickey* Court, on appeal from an injunction prohibiting a widow's proposed action to disinter her husband's remains from his family plot, recognized the propriety of four factors relevant to a disinterment decision: (1) whether the initial resting place was made with deliberation and without mental reservation that at some future time removal might be desired; (2) whether there are evidences of antagonism and hostility between the surviving spouse and the owners of the tomb or burial plot such as would prevent the surviving spouse from visiting the grave freely and without embarrassment or humiliation; (3) whether the deceased spouse had evidenced a preference for one location as opposed to another; and (4) whether the disinterment would conflict with the deceased person's religious beliefs. *Hickey*, 156 Ind. App. at 615–16, 298 N.E.2d at 32.

*erty v. Daugherty,* 816 N.E.2d 1180, 1187 (Ind.Ct.App.2004).

Here, the parties have disputed whether Isabella was able to freely and carefully consider the propriety of moving Sherman's remains from Kentucky in 2005. They do not, however, contest any fact relative to the present circumstances of interment. We assume, consistent with the Warren Plaintiffs' factual contentions, Isabella suffered from Alzheimer's during her later years and may not have been fully aware of the implications of some actions or decisions. Nevertheless, Isabella consistently expressed her desire to be buried beside her husband.

Sherman and Isabella are buried beside each other in a public cemetery. One particular location cannot be equally accessible to each of the eleven surviving children as they now live in diverse locations. However, there is no indication that any surviving child would be hampered in his or her efforts to visit the gravesites. The trial court found "no justification" for disinterment. (App.34.) We agree that the summary judgment record does not reveal any compelling reason to disinter the remains of two individuals, one of whom died over thirty-eight years ago. The trial court's exercise of its discretion was not contrary to the facts and circumstances before it.

Affirmed.

MATHIAS, J., and BARNES, J., concur.