**FILED**

Mar 08 2019, 5:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

James O. Waanders
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hal Mullett, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Deborah K. Baker and City of Butler, Indiana, <br><br> *Appellees-Defendants* | March 8, 2019 <br><br> Court of Appeals Case No. 18A-PL-2080 <br><br> Appeal from the DeKalb Superior Court <br><br> The Honorable Kevin P. Wallace, Judge <br><br> Trial Court Cause No. 17D01-1408-PL-45 |

**Crone, Judge.**

## Case Summary

[1] Hal Mullett appeals the trial court's order denying his request that Deborah K. Baker be ordered to disinter the remains of her mother, Joyce Mullett Mink, from a family burial plot purchased by Everett Mullett, Hal's grandfather and Deborah's great-grandfather. Concluding that Hal waived his argument, we affirm.

# Facts and Procedural History

[2] In 1952, Everett purchased the family burial plot, consisting of five burial spaces, in the Butler Cemetery, which is owned and operated by the City of Butler ("the City"). Everett was married to Elizabeth Mullett. In 1959, Everett died and was buried in space number 3. In 1966, Elizabeth died and was buried in space number 2.

[3] Everett and Elizabeth had two sons, Gaylord and Earl, who are now both deceased but are not buried in the family burial plot.[1] Gaylord had three children, one of whom is Hal. Earl had a son, Keith. Keith married Joyce, and they had several children, including Deborah. In 1985, Keith and Joyce divorced, and Joyce married Garner Mink,[2] to whom she was married at the time of her death.

[4] In 2005, Joyce arranged to have her mother, Eula Champion, buried in the family burial plot in space number 5. In 2013, Joyce died, and Deborah arranged to have Joyce buried in the family burial plot in space number 1.

[5] In August 2014, Hal filed a complaint against Deborah and the City, alleging as follows: the family burial plot was titled to Everett; neither Joyce nor Deborah owns the family burial plot; Hal is Everett's sole surviving grandson; Hal did not execute any written document providing a waiver or giving permission for

---

[1] They are buried in separate family burial plots, which are not at issue here.

[2] The Appealed Order mistakenly refers to Garner as Gaylord.

Joyce to be buried in the family burial plot; Joyce was wrongfully buried in the family burial plot; and Hal's sole remedy was disinterment of Joyce's body. Appellant's App. at 12. Hal prayed that the "court order disinterment of Joyce."[3] *Id*. In March 2014, the City filed a summary judgment motion. In July 2015, the trial court issued an order granting the City's summary judgment motion, in which the court stated, "[Hal] concedes that [the City's] Motion for Summary Judgment shall be granted." *Id*. at 89.

[6] In March 2018, a bench trial was held. Hal and Deborah both testified. After the evidence was heard, the trial court took the matter under advisement and granted the parties leave to file proposed findings of facts and conclusions thereon in lieu of presenting final argument. Hal and Deborah each filed proposed findings and conclusions, but neither document is included in the record before us.

[7] In August 2018, the trial court issued findings of fact and conclusions thereon, in which it found that "[Hal] does not consider [Joyce] a family member and has requested the remains of [Joyce] be disinterred and reinterred elsewhere." Appealed Order at 2. The trial court also found that Deborah had not consented, nor could she obtain her brothers' consent, to Joyce's disinterment, and preferred that Joyce's remains stay in the family burial plot. *Id*. The trial court concluded in relevant part as follows:

---

[3] Hal did not challenge Eula's burial in the family burial plot.

11.  A family burial plot has been created under I.C. 23-14-41-2. [Hal] has the right to use a space in the family burial plot under I.C. 23-14-41-4.

12.  [Hal] argues that [Joyce] is improperly buried in the family burial plot and that "the only available remedy to [him] is the removal of [Joyce] from the family burial plot."  [Hal] offers no legal authority for this position.

13.  I.C. 24-14-41 *et seq.* is silent regarding a remedy under these circumstances.  It may be that the heirs of Everett Mullett and Elizabeth Mullett are entitled to damages in the amount of the fair market value of a burial space in the Butler Cemetery.  But the placement of the remains of [Joyce] does not prevent [Hal] from being buried in the family burial plot since space number 4 remains vacant.

14. I.C. 23-14-57 *et seq.* speaks about the requirements for disinterments, disentombments or disinurnments.  [Hal] has not argued that he meets these statutory requirements.  As [Deborah] points out in her proposed findings of fact and conclusions of law, disinterment is an extraordinary remedy, which cannot be taken lightly.

*Id*.  The trial court ordered that "[Hal's] request that [Deborah] be ordered to disinter the remains of [Joyce] is overruled and denied."  *Id*. at 3.  This appeal ensued.

## Discussion and Decision

Before turning to Hal's challenge to the appealed order, we note that Deborah has not filed an appellee's brief, and therefore we will not undertake the burden of developing arguments for her. *Jenkins v. Jenkins*, 17 N.E.3d 350, 351 (Ind. Ct.

App. 2014).  Instead, we apply a less stringent standard of review and will reverse upon a showing of prima facie error, which is error "at first sight, on first appearance, or on the face of it."  *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind. Ct. App. 2006).  However, to determine whether reversal is required, we are still obligated to correctly apply the law to the facts in the record. *Jenkins*, 17 N.E.3d at 352.

[9]  Hal seeks to disinter Joyce's remains from the family burial plot.  Indiana Code Section 23-14-57-1 governs the requirements for disinterment and provides in relevant part as follows:

> (a) As used in this section, "removal" or "removed" refers to the disinterment, disentombment, or disinurnment of the remains of a deceased human.
>
> (b) Except as provided in subsection (e) and sections 4 and 5 of this chapter, *the remains, either cremated or uncremated, of a deceased human shall not be removed from a cemetery without*:
>
>> (1) a written order:
>>
>>> (A) that is issued by the state department of health; and
>>
>> (2) the written consent of:
>>
>>> (A) the owner of the cemetery; or
>>> (B) the owner's representative; and
>>
>> (3) *the written consent of a person or persons referred to in one (1) of the following clauses*, which are listed according to priority:

(A) The individual who was the spouse of the deceased at the time of the deceased's death.

(B) *The surviving adult child of the deceased.* If there is more than one (1) surviving adult child of the deceased, the requirement for written consent under this subdivision is satisfied if:

(i) any one (1) of the surviving adult children provides written consent to the removal of the deceased's remains;

(ii) the consent provided under item (i) confirms that all other surviving adult children of the deceased have been notified of the proposed removal of the deceased's remains; and

(iii) the state department of health does not receive a written objection to the proposed removal from any of the deceased's surviving adult children.

….

(c) Before issuing a written authorization under subsection (b), *the state department of health shall do the following*:

(1) Obtain written evidence that a licensed funeral director has agreed to:

(A) be present at the removal and at the reinterment, reentombment, or reinurnment of the remains; and

> > (B) cause the completed order of the state department of health to be recorded in the office of the county recorder of the county where the removal occurs.
>
> > (2) Obtain a copy of:
>
> > > (A) the written consent required under subsection (b)(3); *or*
>
> > > (B) *a court order obtained by a person under subsection (d).*
>
> > (d) *If the written consent of an individual authorized under subsection (b)(3) to give consent is not available, a person who has made a request under this section to the state department of health may petition a court to determine whether to waive the consent requirement of subsection (b)(3). In determining whether to waive the requirement, the court shall consider the viewpoint of any issue (as defined in IC 29-1-1-3)*[4] *of the deceased. In a proceeding under this subsection, the court may not order the disinterment, disentombment, or disinurnment of the remains of a deceased human.*

(Emphases added.)

[10] Hal frames the issue on appeal as whether "the Trial Court err[ed] in refusing to order the consent, or to determine the unavailability and waiver of the requirement of consent, under Indiana Code 23-14-57 of a family member to the disinterment of a non-family member wrongfully buried in a family burial

---

[4] Indiana Code Section 29-1-1-3(16) provides, "'Issue' of a person, when used to refer to persons who take by intestate succession, includes all lawful lineal descendants except those who are lineal descendants of living lineal descendants of the intestate."

plot." Appellant's Br. at 4. He argues that he is seeking a determination that "the consent of Deborah necessary for correction of Joyce's wrongful burial is either unnecessary or that such consent is unavailable and the requirement of consent be considered waived, so that [he] can initiate the disinterment of Joyce through the state department of health, and so that the Cemetery can fulfill its statutory duty to correct a wrongful burial," under Indiana Code Section 23-14-59-2.[5] *Id*. at 22. According to Hal, the City has a statutory duty to correct the wrongful burial under Indiana Code Section 23-14-59-2, and therefore the consent for disinterment required under Section 23-14-57-1(b)(3) should either not be required or waived under Section 23-14-57-1(d).

---

[5] Indiana Code Section 23-14-59-2 provides,

> When a wrongful burial, entombment, inurnment, disinterment, disentombment, or disinurnment referred to in section 1(1), 1(2), 1(4), or 1(5) of this chapter occurs, the cemetery owner shall:
>
>> (1) at the expense of the cemetery owner, correct the wrongful burial, entombment, inurnment, disinterment, disentombment, or disinurnment as soon as practical after becoming aware of the error; and
>>
>> (2) notify:
>>
>>> (A) the spouse, if living, of the deceased person whose remains were wrongfully buried, entombed, inurned, disinterred, disentombed, or disinurned, or whose outer burial container was wrongfully placed;
>>>
>>> (B) the parents, if living, of a deceased minor child whose remains were wrongfully buried, entombed, inurned, disinterred, disentombed, or disinurned, or whose outer burial container was wrongfully placed;
>>>
>>> (C) the person or persons whose marker, monument, memorial, foundation, or base was wrongfully placed; or
>>>
>>> (D) the person or persons who authorized the original burial, entombment, inurnment, disinterment, disentombment, or disinurnment;
>>
>> of the occurrence.

[11]     Our review of Hal's complaint, the transcript of the bench trial, and the appealed order reveals that he did not present this argument to or request this relief from the trial court. In his complaint, Hal alleged that Joyce was wrongfully buried in the family burial plot because neither she nor Deborah owned the family burial lot, and that he, as the sole surviving grandson of the person who had held title to the family burial lot, had not executed a written document indicating a waiver or giving permission for Joyce to be buried there. Hal prayed for the court to order Joyce's disinterment. At the bench trial, Hal's attorney stated in his opening statement that "[Hal] is requesting the only relief he can receive which will be of any satisfaction is that [Joyce be] disinterred and located on another lot, a process that is not common but not unheard of." Tr. at 5. The parties did not present closing arguments at trial, and Hal has not included his proposed findings and conclusions in his appendix. In the appealed order, the trial court concluded that Hal had not argued that he met the statutory requirements for disinterments under Indiana Code Section 23-14-57 and denied "[Hal's] request that [Deborah] be ordered to disinter the remains of [Joyce]." Appealed Order at 3.

[12]     As we have previously explained,

> A party generally waives appellate review of an issue or argument unless that party presented that issue or argument before the trial court. However, that principle is not without limits....
>
> The rule that parties will be held to trial court theories by the appellate tribunal does not mean that no new position may be

taken, or that new arguments may not be adduced; all that it means is that substantive questions independent in character and not within the issues or not presented to the trial court shall not be first made upon appeal. Questions within the issues and before the trial court are before the appellate court, and new arguments and authorities may with strict propriety be brought forward....

This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties. Appellate courts, on the other hand, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision.

The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Conversely, an intermediate court of appeals, for the most part, is not the forum for the initial decisions in a case.

*Showalter v. Town of Thorntown*, 902 N.E.2d 338, 342 (Ind. Ct. App. 2009) (citations and quotations omitted), *trans. denied*.

[13] Given the importance of consent to disinterment required by Section 23-14-57-1(b)(3), it is significant that there is absolutely no mention in the complaint, transcript, or appealed order of the explicit authority granted in Subsection 1(d) to the trial court to waive the consent requirement after considering the viewpoint of any issue of the deceased. Also, although Subsection 1(d) explicitly prohibits a court from ordering the disinterment of the remains of a deceased human, the trial court did not mention that prohibition in deciding not to order disinterment. Hal has been afforded an evidentiary hearing on the

legal issues he raised; he may not obtain a second bite at the apple by raising a new legal argument that cannot be decided on facts that are not already in the record.[6] For this reason, we find his argument on appeal waived. Therefore, we affirm.

Affirmed.

Vaidik, C.J., and Mathias, J., concur.

---

[6] Hal does not argue that the family consent requirements under Section 23-14-57-1(b)(3) are inapplicable as a matter of law when a wrongful burial occurs under Section 23-14-59-2.